## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SPENCER GILES, individually and on
behalf of similarly situated persons,

        Plaintiff,

    v.

SHRI YAMUNA ENTERPRISES,
INC., *et al.*,

        Defendants.

Case No. 1:20-cv-04489-ELR

## PLAINTIFFS' UNOPPOSED MOTION TO APPROVE
## COLLECTIVE ACTION SETTLEMENT
## WITH MEMORANDUM IN SUPPORT

Named Plaintiff Spencer Giles moves for approval of the settlement reached in this Fair Labor Standards Act ("FLSA") collective action. Defendants Shri Yamuna Enterprises, Inc, GSJ Covington, LLC, Gopi Covington, LLC, Sanjay Patel, Gani Mohammed and Rizwan Momin (collectively "Defendants") do not oppose this Motion. To effectuate a binding release, FLSA settlements require judicial approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982). Accordingly, Plaintiffs respectfully request that the Court enter an Order granting the Motion, approving the parties' settlement, and dismissing the claims with prejudice. A copy of the parties' Settlement and Release Agreement ("Settlement Agreement") is attached hereto as "Exhibit 1."

Plaintiffs' counsel has conferred with defense counsel and Defendants do not oppose this motion.

## Memorandum in Support

Plaintiffs and Defendants have reached a settlement of this FLSA collective action. Plaintiffs allege that Defendants under-reimbursed its delivery drivers for the automotive expenses they incurred to the extent that their unreimbursed vehicle costs reduced their net wages below the federal minimum wage (nominal wages – unreimbursed vehicle expenses = subminimum net wages).

Before and after the Court conditionally certified the case as a collective action pursuant to the parties' stipulation, a total of 20 delivery drivers, including Plaintiff Giles (collectively, "Drivers"), filed opt-in forms to assert their claims in this case. Between November 30, 2021 and February 3, 2021, the parties engaged in an arm's-length negotiations through a series of offers and demands.

The settlement will provide substantial relief to the opt-ins. The settlement creates a Settlement Fund that will be paid out to the Plaintiffs, and will compensate Plaintiffs' counsel for most of their time and costs. Distributions from the settlement fund will be allocated based on an equitable formula considering the total number of deliveries each Plaintiff performed, the average length of deliveries per store, the wage rate they earned, and the reimbursements they received. The settlement value

fully considers the risk and expense of continued litigation. The settlement also provides a minimum payout of $50.00 per Plaintiff.

In sum, the settlement should be approved as a fair and reasonable compromise of a *bona fide* dispute.

## FACTS AND PROCEDURAL HISTORY

On November 3, 2020, Named Plaintiff Spencer Giles filed a Complaint against Defendants asserting a collective action under § 16(b) of the FLSA, 29 U.S.C. §216(b). Mr. Giles alleged that Defendants under-reimbursed their delivery drivers for the expenses incurred delivering food which caused their net wages to fall below the minimum wage. ECF Doc. # 1.

On February 16 and 22, 2021, Defendants filed Answers denying that their delivery drivers were under-reimbursed for expenses and denying minimum wage violations. Defendants raised various affirmative defenses. Further, Defendants disputed Plaintiff's asserted bases for proceeding as a collective action. ECF Doc. #'s 20-22 & 24.

On June 25, 2021 and July 22, 2021, the parties filed joint motions for conditional collective action certification, asking the Court to approve a proposed Notice to the putative opt-in plaintiffs. ECF Doc. #'s 38 & 41. The first motion concerned only the original allegation of minimum wage violations resulting from under-reimbursed vehicle costs incurred in performing the job. ECF Doc. # 38. The second motion

concerned the same allegation plus a then recently-discovered allegation of unpaid overtime wages when delivery drivers worked at least 40 hours per week considering their combined work time at more than one of Defendants' stores.  ECF Doc. # 41.

The Court granted the joint motions for conditional certification on July 6, 2021 and July 27, 2021.  ECF Doc. #'s 40 & 42.  Plaintiffs then mailed the Court-approved Notice to putative class members. The Notice advised those who joined this case of the terms and conditions under which they were joining:

> If you choose to join this lawsuit, and are ultimately determined by the Court to be a Class Member, you will be bound by any ruling, settlement or judgment, whether favorable or unfavorable, on the claims asserted. You will also be bound by, and will share in, to the extent appropriate, any settlement of the claims that may be reached on behalf of the Class. By joining this lawsuit, you designate the named Plaintiff as your representative, and to the fullest extent possible, to make decisions on your behalf concerning the case, the method and manner of conducting the case, the entering of an agreement with Plaintiffs' counsel regarding payment of attorneys' fees and court costs, the approval of settlements, and all other matters pertaining to this lawsuit. While this suit is pending, you may be required to submit documents and written answers to questions and potentially to testify under oath at a deposition, hearing, or trial.

Ex. 2.  The Notice also advised:

> If you choose not to join this lawsuit, you will not be directly affected by any ruling, judgment or settlement rendered on the federal claims asserted in this case, whether favorable or unfavorable.  You should be aware that Fair Labor Standards Act claims are limited to a two- or three-year statute of limitations, and delay in joining this case, or proceeding separately, may result in some or all of your claims expiring as a matter of law.

*Id.*

4

All opt-in plaintiffs filed a consent to join form with the Court, stating:

> I want to join the lawsuit, *Giles v. Shri Yamuna Enterprises, Inc., GSJ Covington, LLC, Gopi Covington, LLC, Sanjay, Patel, Gani Mohammed and Rizwan Momin d/b/a "Marco's Pizza,"* which seeks unpaid vehicle reimbursement and wages. I designate the Named Plaintiff and his Counsel to make all decisions on my behalf concerning the method and manner of conducting the lawsuit including settlement, the entering of an agreement regarding payment of attorneys' fees and costs, and all other matters pertaining to this lawsuit. For purposes of this lawsuit, I choose to be represented by Weinhaus & Potashnick; Liberman, Goldstein & Karsh, P.C. and Weiner & Sand, LLC, and other attorneys with whom they may associate.

Ex. 3. In all, 20 individuals, including Mr. Giles, joined this suit by filing of their respective consent to join forms.

Based on extensive written discovery and the results of the opt-in process, Plaintiffs' counsel calculated damages and formulated a settlement demand. Among other data, Defendants' discovery responses provided Plaintiffs' counsel the four core components needed to calculate damages in minimum wage / vehicle reimbursement claims: (1) work time, (2) pay, (3) deliveries and (4) reimbursements. Potashnick Decl. (Ex. 4), ¶ 8. For the purpose of efficiency, Plaintiffs' counsel hired a vendor to computer map voluminous delivery data to determine the average delivery distance of each of Defendants' stores. Plaintiffs' counsel then synthesized the work time, pay, delivery, mileage and reimbursement data into interactive damage calculation spreadsheets. Plaintiffs disclosed those calculations to defense

counsel to facilitate negotiations. The calculations helped both sides evaluate liability issues and quantify damages. *Id.*

By cross-referencing the opt-in list with the work time data, it was apparent that Mr. Giles was the only one of the 20 opt-in Plaintiffs to suffer an overtime pay violation. *Id.*, ¶ 9.

Between November 30, 2021 and February 3, 2022, the parties exchanged a series of offers and demands, ultimately resulting in agreement to the core terms of the settlement. They followed those negotiations with cooperative efforts to agree upon the language of the formal Settlement Agreement attached as "Exhibit 1."

## Approval Process

Unlike settlements under Fed. R. Civ. P. 23, FLSA settlements are not subject to a two-stage process of preliminary approval followed by final approval, and no final fairness hearing is required. *See, e.g., Williams v. K&K Assisted Living LLC,* 2016 U.S. Dist. LEXIS 9310, *2-4 (E.D. Mich. Jan. 27); *Prena v. BMO Fin. Corp.,* 2015 U.S. Dist. LEXIS 65474, *1-2 (N.D. Ill. May 15) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision)"); *Prince v. QS Am., Inc.,* Case No. 1:15-cv-02033-TWT, Docs. 63 & 65 (N.D. Ga. 2016) (approving FLSA settlement for conditionally-certified class in one step).

### KEY SETTLEMENT TERMS

The attached Settlement Agreement contains the full terms for the Court's review. The Settlement Agreement requires Defendants to create a settlement fund that will provide Drivers the equivalent of an increased reimbursement rate for each delivery made in exchange for a limited release encompassing waiver of only the Drivers' wage and hour claims under state and federal law.  The settlement fund will be paid out in total and will be distributed equitably based on the number of deliveries performed, the wage rates earned, and the vehicle-cost reimbursements received for each Driver during the applicable limitations period.

The settlement will provide each Plaintiff the equivalent of 100% of their minimum wage damages calculated at the IRS standard business mileage rate ("IRS rate") plus approximately 44% of their liquidated damages.

The Settlement will also provide Mr. Giles a $5,000.00 recovery for a general release, including release of his overtime pay damages.  In further consideration for that payment, Mr. Giles will sign a full release of claims.

The Settlement further provides for attorneys' fees and costs, which the parties negotiated separately from, and in addition to, the Plaintiffs' recovery.

ARGUMENT

## I. The Court Should Approve this Case to be Settled as a Collective Action

The Eleventh Circuit recognizes three factors considered in determining final certification of an FLSA collective action:  "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations[.]"  *Dybach v. Fla. Dep't. of Corr.*, 942 F.2d 1562, 1261 (11th Cir. 1991); *Benton v. Deli Mgmt., Inc.,* 396 F.Supp.3d 1261, 1284 (N.D. Ga. Aug. 8, 2019) (quoting *Dybach*).

In *Benton,* this District granted final collective action certification of the same minimum wage / vehicle reimbursement claim. 396 F.Supp.3d at 1284-86.  In a hotly-contested decertification battle, this District recognized that final certification should be granted because any variations between class members "will not defeat certification because the Court agrees with Plaintiffs that they may rely on a reasonable estimate of their [vehicle] expenses, rather than their actual expenses, to make a showing that their (approximate) expenses, when subtracted from their compensation, results in a below-minimum wage." *Id.*, at 1285.  This District further explained that "[t]he existence of so many … commonalities among the putative class—including job descriptions, duties, and pay provisions (e.g., they were all paid hourly), as well as the central question of the reasonableness of Jason's Deli's current

8

reimbursement—convince the Court that proceeding as a collective action is appropriate." *Id.*, at 1285-86.

The same factors warrant final certification here. All Drivers held the same job, performed the same primary job duty of delivering pizzas and other food to Defendants' customers using their personal vehicles, they were compensated by similar hourly pay rates, drove similar delivery distances, Defendant reimbursed them with the same or comparable rate per mile and/or delivery, Defendant did not track any of their actual vehicle costs, and their claims are based on the same legal theory. As this District recognized in *Benton*, an employer's vehicle cost reimbursement method is the "central question" in all Plaintiffs' claims. *Id.* Thus, as in *Benton,* the Court should grant final collective action certification of the minimum wage claim.

## II.    The Court Should Approve The Settlement

Courts should approve FLSA settlements which reflect a "reasonable resolution of a *bona fide* dispute." *Lynn's Food Stores,* 679 F.2d at 1354. The parties settlement easily meets that standard.

### A.    The Settlement Resolves a "*Bona Fide*" Dispute

Plaintiffs allege that Defendants violated the FLSA because they failed to reasonably reimburse their delivery drivers for their automobile expenses, and thus

failed to pay them minimum wages (nominal wage rate – unreimbursed vehicle expenses = subminimum net wages).

Defendants adamantly deny Plaintiffs' allegations. Defendants argue, among other contentions, that delivery drivers were sufficiently paid and reimbursed. Defendants have also argued that Plaintiffs' damage calculations are inflated.

If Plaintiffs' allegations were ultimately proven correct, Defendant would be faced with a monetary verdict in Plaintiffs' favor, as well as the duty to pay both sides' attorney fees and costs. Plaintiffs attorney's fees would equate to numerous multiples of the Plaintiffs' recovery by that time. If Defendant's arguments were correct, then Plaintiffs faced a potential dismissal of their claims and no recovery for the Drivers.

Based on the history of this litigation and these additional facts, the Court should readily conclude that a *bona fide* dispute between the parties exists over FLSA violations and the various defenses asserted.

## III. The Proposed Settlement Is Fair and Reasonable.

This settlement was the product of arm's-length negotiations by experienced counsel and has the effect of providing substantial relief to all Drivers, eliminating the inherent risks both sides may bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d at

1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as an *indicia* of fairness); s*ee also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.").

The settlement provides that the Plaintiffs will each receive 100% of their actual damages calculated based on the IRS standard business mileage rate ("IRS rate") plus 44% of their liquidated damages.  From another perspective, the settlement provides Plaintiffs 72% of their maximum damages, calculated at the IRS rate.  The average recovery is $1,413.61 per Plaintiff.  Notably, fees and costs were negotiated separately, and thus fees and costs will not be deducted from the Plaintiffs' recoveries.  *See, e.g., Benton v. Deli Mgmt., Inc.,* Case No. 1:17-cv-00296-TCB (N.D. Ga.), ECF Doc. # 139 (approving settlement which provided each plaintiff approximately 89% of their actual damages); *Prince v. Perfect Delivery, Inc.,* Case No. 8:17-cv-01950-BHH (D.S.C.), ECF Doc. # 45-2, at 15-16 (approving settlement when plaintiffs recovered the amount of actual damages *before* subtracting service award, fees and costs) & ECF Doc. # 62 (approving settlement); *Jimenez v.*

*Pizzerias, LLC,* 2017 U.S. Dist. LEXIS 129820, \*10-11 (S.D. Fla. Aug. 14) (approving settlement when plaintiffs recovered two-thirds of the amount of actual damages *before* subtracting service award, fees and costs); *Selk v. Pioneers Memorial Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016) (recognizing reasonable ranges of settlement of FLSA claims between 26% and 60%); *Jones v. Agilysis, Inc.,* 2014 U.S. Dist. LEXIS 68562, \*9-10 (N.D. Cal. May 19) (finding a FLSA settlement that constituted between 30% to 60% of recoverable damages to constitute a "tangible monetary benefit" for the class members); *Knight v. Red Door Salons,* 2009 U.S. Dist. LEXIS 11149, \*9-10 (N.D. Cal. Feb. 2) (recovery of 50% of possible damages in a wage and hour action was "substantial achievement on behalf of the class").

## IV.    Additional Factors Warrant Settlement Approval

Consideration of additional relevant factors confirms the proposed settlement should be approved as is fair and reasonable.

### A.    Similar Settlements Are Repeatedly Approved

Courts around the nation, including this District, routinely approve similar settlements in minimum wage claims based on under-reimbursement of vehicle expenses. *See, e.g., Benton v. Deli Mgmt., Inc.,* Case No. 1:17-cv-00296-TCB (N.D. Ga.), ECF Doc. # 139 (approving settlement which provided each plaintiff approximately 89% of their actual damages); *Prince v. QS America, Inc.*, Case No.

1:15-cv-02033-TWT, Docs. 63, 65 (N.D. Ga. 2016); *Merbaum v. Cady Studios, Inc., Case No*. 1:16-cv-04623-TWT, Docs. 27, 28 (N.D. Ga. 2017); *Gomez v. South Fla. Pizza, LLC,* 2018 U.S. Dist. LEXIS 11648 (S.D. Fla. Jan. 24, 2018); *Jimenez v. Pizzerias, LLC,* 2017 U.S. Dist. LEXIS 129820 (S.D. Fla. Aug. 14, 2017); *Armes v. Hot Pizzas, LLC,* 2017 U.S. Dist. LEXIS 89920 (D. Ariz. Jun. 9, 2017); *Hackett v. ADF Rest. Invs.,* 259 F.Supp.3d 360 (D. Md. Dec. 19, 2016).

### B.    Public Policy Favor Settlement

The familiar adage that "public policy favors settlements" is particularly true in complex cases, such as this, where substantial resources can be conserved by avoiding the time, cost and rigor of protracted litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing policy of encouraging settlement of FLSA litigation).  There can be no doubt that substantial time and money, both for this Court as well as the parties, has been conserved in fairly settling now as opposed to continuing to litigate this case through trial and potential appeals.

### C.    Substantial Obstacles Exist if the Litigation Continues, and the Settlement Offers Substantial, Immediate Relief

As outlined above, the parties adamantly disagree about the merits of Plaintiffs' claims, the viability of the various defenses, and the amount of damages shown by the facts.  The outcome of a trial on the merits is far from a foregone conclusion.  Although numerous similar single-plaintiff claims have been arbitrated, no similar claim has been tried to a jury.  The possibility of success may turn on a battle of

vehicle costing experts.  *See, e.g., In re Bear Stearns Cos., Inc. Sec. Litig.,* 909 F.Supp.2d 259, 266-67 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured.").  Even if Plaintiffs established liability, they still faced considerable obstacles in proving both the fact and amount of damages.  Although the top of the range of potential recovery at trial may have been greater than obtained through this settlement, it is equally possible that such recovery would have been less.

Consequently, this settlement provides a certain result and value now, as opposed to a speculative result that may occur years from now. The substantial benefit that will be received by opt-in Plaintiffs immediately and made certain by the settlement is a significant factor weighing in favor of the Court's approval of the proposed settlement. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 326 (N.D. Ga. 1993) (*"*[T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, 'it has been held proper to take the bird in the hand instead of a prospective flock in the bush.'").

### D.    This Case Was Complex

This case certainly qualifies as complex, both in establishing liability and in proving damages. Many issues of fact and law remain unanswered and would have

to be resolved at or before trial. Any trial would be lengthy, costly, and complex to resolve the alleged violations of the FLSA's minimum wage requirements during each week of the recovery period. Both sides would be required to pay for expensive expert testimony and trial preparation. *See, e.g., Perrin v. Papa John's Int'l., Inc.,* 2014 U.S. Dist. LEXIS 133974, *12-13 (E.D. Mo. Sept. 24) (recognizing that each side had hired vehicle costing experts to establish a reasonable company-wide vehicle cost reimbursement rate).

Regardless of the outcome at trial, post-judgment appeals would be likely. Accordingly, the complexity, expense and duration of litigation weigh in favor of approving the proposed settlement.

### E.    Mr. Giles and His Counsel Support the Settlement

During this litigation, Plaintiffs' Counsel have gained a comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and have acquired ample evidence on which to assess the proposed settlement. Based on their knowledge of the facts and the applicable law, as well as their extensive experience litigating / arbitrating many similar FLSA actions on behalf of pizza delivery drivers, Plaintiffs' Counsel believe the settlement is fair, reasonable, and adequate. Potashnick Decl., ¶ 16.

Additionally, Plaintiff Giles, who has been an active participant throughout this litigation and all settlement negotiations, has executed the Settlement Agreement

indicating his approval of the agreement. Accordingly, this Court should conclude that the proposed settlement reflects a fair and reasonable resolution of a *bona fide* dispute over minimum wage compliance and approve the settlement.

## V.    Settlement of Mr. Giles' Overtime Pay Claim

Mr. Giles separately settled his claim for failure to provide overtime pay.  He alleged that he was not paid overtime wages when he worked at total of more than 40 hours per week at two or more of Defendants' stores.  Cross-referencing the opt-ins with Defendants' records showed that he was the only Plaintiff who worked a total of at least 40 hours in the same week at more than one store.  Thus, that case was settled on an individual basis.

## VI.    Attorney's Fees and Costs

The FLSA provides that the Court "*shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C § 216(b) (emphasis added).  Unlike some fee-shifting statutes, attorney fee and cost awards under the FLSA are "mandatory."  *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 603 F.3d 888, 893 n.1 (11th Cir. 2010) (collecting cases); *compare* 29 U.S.C. § 216(b) (stating the Court "shall" award fees) *with* 42 U.S.C. § 1988(b) (noting the court "may" award fees "in its discretion").

A fee-shifting provision's purpose is to encourage private litigants to enforce the laws that protect the public in areas like civil rights, consumer protection and the environment. *City of Riverside v. Rivera*, 477 U.S. 561, 574-75 (1986). That purpose is particularly applicable in wage and hour litigation for low-wage earning employees. Courts recognize that plaintiffs' counsel who successfully pursue wage and hour claims "must be adequately compensated for their efforts," otherwise "wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Prasker v. Asia Five Eight LLC,* 2010 U.S. Dist. LEXIS 1445, at *17 (S.D.N.Y. Jan. 4, 2010)*; see also Sand v. Greenberg*, 2010 U.S. Dist. LEXIS 1120, at *9 (S.D.N.Y. Jan. 7, 2010) ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected."). Civil enforcement of wage and hour laws is an important supplement to the work of government regulators in carrying out the public policy of the FLSA. *Andersen v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686-687 (1946) (noting the FLSA is a "remedial" statute that embodies "great public policy"); *Fegley v. Higgins,* 19 F.3d 1126, 1134-1135 (6th Cir. 1994) ("The purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process…'").

Under the lodestar method, courts determine attorney's fees based on the product of the reasonable hours spent on the case and a reasonable hourly rate. *Hensley v.*

*Eckerhart,* 461 U.S. 424, 433 (1983). "There is a strong presumption that the lodestar yields a reasonable fee[.]" *In re Home Depot, Inc. Cust. Data Sec. Breach Litig.,* 931 F.3d 1065,. 1082 (11th Cir. 2019).

## A.    The Amount of Time Spent by Plaintiffs' Counsel Was Reasonable

In determining whether the number of hours spent on litigation was reasonable, district courts examine whether "the time spent was reasonably necessary and that its counsel made 'a good faith effort to exclude from the fee request hours that are excessive, redundant, or otherwise unnecessary.'" *Hensley,* 461 U.S. at 434.

As explained above and in the attached declaration, Plaintiffs' counsel staffed and managed this case as efficiently as possible. Responsibilities were not duplicated and much of the work – such as data aggregation, damage calculations  and basic client communications – was performed by paralegals as opposed to attorneys.

All of the time shown on the attached records was necessary to achieve a favorable outcome and added value to the case.  Potashnick Decl. ¶ 12; *see, e.g., Perkins v. Mobile Hous. Bd.,* 847 F.2d 735, 738 (11th Cir. 1988) (recognizing that "[s]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case…) (citing).

**B.    Counsel's Rates Are Reasonable**

**1.    Mark Potashnick**

Mark Potashnick has been in private practice for 29 years.  For many years, his practice has focused on representing workers in complex employment, employee benefits and wage and hour litigation.  He has been named a Missouri and Kansas "Super Lawyer" every year since 2015.  He was chosen by the U.S. District Court for the Eastern District of Missouri as a trustee to oversee dissolution of an employee pension plan. Mr. Potashnick has spoken throughout the nation regarding workplace rights.

Over the past decade, Mr. Potashnick has litigated or arbitrated more than 100 FLSA and state wage and hour claims across the nation alleging minimum wage violations resulting from under-reimbursed vehicle costs (nominal wages – unreimbursed vehicle costs = subminimum net wages).  Ex. 3, ¶¶ 4-5; Ex. 4, ¶¶ 2-3. Mr. Potashnick has litigated similar wage and hour claims within every federal judicial circuit except the First Circuit.  Mr. Potashnick is identified as counsel in nearly 400 decisions available on LEXIS.

Beginning Spring 2009, Mr. Potashnick pioneered minimum wage / vehicle reimbursement litigation. He, and his co-counsel, were responsible for developing a driver-friendly body of applicable case law, including but not limited to:

a.  Decisions recognizing a cause of action under the FLSA / sufficient pleading:
    i.   *Wass v. NPC Int'l., Inc.,* 688 F.Supp.2d 1282, 1285-86 (D. Kan. 2010)
    ii.  *Perrin v. Papa John's Int'l., Inc.,* 818 F.Supp.2d 1146, 1149-53 (E.D. Mo. Mar. 8. 2011)
    iii. *Darrow v. WKRP Mgmt., LLC,* 2011 U.S. Dist. LEXIS 59388, at *9-17 (D. Colo. Jun. 3, 2011)
    iv.  *Smith v. Pizza Hut, Inc.,* 2011 U.S. Dist. LEXIS 76793, at *11-12 & n.4 (D. Colo. July 14, 2011)
    v.   *Cornish v. Deli Mgmt., Inc.,* 2016 U.S. Dist. LEXIS 141209, at *1-15 (D. Md. Oct. 12, 2016).

b.  Decisions recognizing a cause of action for minimum wage violations based on under-reimbursed vehicle costs under various state laws:

    i.   *Perrin v. Papa John's Int'l., Inc.,* 2013 U.S. Dist. LEXIS 181749, at *21 & n.5 (E.D. Mo. Dec. 31, 2013) (recognizing claims under laws of 5 state laws).
    ii.  *Hatmaker v. PJ Ohio, LLC,* 2019 U.S. Dist. LEXIS 50403 (S.D. Ohio Mar. 26, 2019) (recognizing claim under North Carolina law).
    iii. *Graham v. The Word Enterprises – Perry, LLC*, 2018 U.S. Dist. LEXIS 101769, at *11-17 (E.D. Mich. Jun. 19, 2018) (recognizing claim under Michigan law).
    iv.  *Tegtmeier v. PJ Iowa, L.C.,* 189 F.Supp.3d 811 (S.D. Iowa May 18, 2016) (recognizing claim under Iowa law).
    v.   *Ralph v. D.O.S. Pizza,* AAA Case No. 01-18-0002-2036 (Berger May 5, 2020), at 11-13 (recognizing claim under California law).
    vi.  *Guidry v. Parts Authority,* AAA Case No. 01-19-003-4265 (Heckman Aug. 11, 2020), at 2-5 (recognizing claim under Arizona law).
    vii. *Morse v. Parts Authority,* AAA Case No. 01-20-0003-8372 (Modica Dec. 29, 2020), at 3-4 (recognizing claim under New York law).

c.  Decisions recognizing that vehicle costing claims may be proven by *estimated* vehicle costs, including:

     i.     *Wass v. NPC Int'l., Inc.*, 688 F.Supp.2d 1282, 1284-87 (D. Kan. Mar. 2, 2010)

     ii.    *Perrin v. Papa John's Int'l, Inc.,* 818 F.Supp.2d 1146, 1146-53 (E.D. Mo. Mar. 8, 2011)

     iii.   *Darrow v. WKRP Mgmt.,* 2011 U.S. Dist. LEXIS 59388, at *9-15 (D. Colo. Jun. 3, 2011)

     iv.   *Smith v. Pizza Hut, Inc.,* 2011 U.S. Dist. LEXIS 76793, at *11-12 n.4 (D. Colo. Jul. 14, 2011)

     v.    *Darrow v. WKRP Mgmt. LLC*, 2012 U.S. Dist. LEXIS 24997, at *15 & n.10 (D. Colo. Feb. 28, 2012)

     vi.   *Perrin v. Papa John's Int'l., Inc.,* 2013 U.S. Dist. LEXIS 181749, at *20-24 (E.D. Mo. Dec. 31, 2013)

     vii.  *Perrin v. Papa John's Int'l., Inc.*, 2014 U.S. Dist. LEXIS 133974, at *5 & 12 (E.D. Mo. Sept. 24, 2014)

     viii. *Drollinger v. Network Global Logistics, LLC,* 2016 U.S. Dist. LEXIS 171013 (D. Colo. Dec. 8, 2016)

     ix.   *Benton v. Deli Mgmt.,* 2019 U.S. Dist. LEXIS 135552 (N.D. Ala. Aug. 8, 2019.

     x.    *Ashton v. PJ Louisiana, Inc.,* AAA Case No. 01-17-0006-8180 (Pilie Nov. 28, 2018), at 3-8.

     xi.   *Ralph v. D.O.S. Pizza, Inc.,* AAA Case No. 01-18-0002-2036 (Berger May 5, 2020), at 5-7.

     xii.  *Nelson v. PJ Cheese, Inc.,* AAA Case No. 01-19-0001-5314 (Kimmell Feb. 3, 2020).

     xiii. *Rice v. PJ Cheese, Inc.,* AAA Case No. 01-20-0014-8150 (Bennett Nov. 12, 2021).

d.  Decisions conditionally certifying collective action claims under the Fair Labor Standards Act ("FLSA"), including:

     i.     *Bass v. PJCOMN Acq. Corp.,* 2010 U.S. Dist. LEXIS 144305, at *4-7 (D. Colo. Sept. 15, 2010)

     ii.    *Wass v. NPC Int'l., Inc.*, 2011 U.S. Dist. LEXIS 32761, at *10-24 (D. Kan. Mar. 28, 2011)

     iii.   *Perrin v. Papa John's Int'l, Inc.*, 2011 U.S. Dist. LEXIS 104059, at *11-18 (E.D. Mo. Sept. 14, 2011)

     iv.   *Smith v. Pizza Hut, Inc.*, 2012 U.S. Dist. LEXIS 56987, at *14-18 (D. Colo. Apr. 21, 2012)

     v.    *Darrow v. WKRP Mgmt., Inc.,* 2012 U.S. Dist. LEXIS 24997, at *7-17 (D. Colo. Feb. 28, 2012)

     vi.  *Sullivan v. PJ United, Inc.,* AAA Case No. 30 20 1300 0597, at 3-10 (Clarke Sept. 23, 2015)

     vii.  *Linkovich v. Capital Pizza Huts, Inc.,* AAA Case No. 01-14-0001-6513, at 5-8 (Holstein Sept. 16, 2015)

     viii.  *Tegtmeier v. PJ Iowa LC,* 2016 U.S. Dist. LEXIS 130190, at *3-21 (S.D. Iowa Sept. 21, 2016)

     ix.  *Drollinger v. Network Global Logistics, Inc.,* No. 16-304, ECF No. 76 (D. Colo. Jan. 18, 2017)

     x.  *Redus v. CSPH, Inc.,* 2017 U.S. Dist. LEXIS 74906, at *1-10 (N.D. Tex. May 17, 2017)

     xi.  *Benton v. Deli Mgmt., Inc.*, 2017 U.S. Dist. LEXIS 211358, at *1-29 (N.D. Ga. Dec. 18, 2017)

     xii.  *Durling v. Papa John's Int'l., Inc.,* Case No. 7:16-cv-03592-CS-JCM (S.D.N.Y. Aug. 3, 2018) (ECF # 387).

     xiii.  *Rodriguez v. GC Pizza, LLC,* 2021 U.S. Dist. LEXIS 223314 (D. Neb. Nov. 16, 2021).

e.  Decision denying decertification.

    *Benton v. Deli Mgmt., Inc.,* 2019 U.S. Dist. LEXIS 135522 (N.D. Ga. Aug. 8, 2019)

f.  Decisions granting class action certification:

     i.  *Bass v. PJ COMN Acq. Corp.,* 2011 U.S. Dist. LEXIS 58352, *1-12 (D. Colo. Jun. 1, 2011)

     ii.  *Perrin v. Papa John's Int'l., Inc.,* 2013 U.S. Dist. LEXIS 181749, *16-26 (E.D. Mo. Dec. 31, 2013)

     iii.  *McFarlin v. The Work Enterprises, Inc.,* 2017 U.S. Dist. LEXIS 164968, *1-13 (E.D. Mich. Oct. 5, 2017).

g.  Decisions recognizing use of expert vehicle costing methodology and/or rejecting *Daubert* challenges:

     i.  *Perrin v. Papa John's Int'l., Inc.,* 2013 U.S. Dist. LEXIS 181749, at *8-15 (E.D. Mo. Dec. 31, 2013).

     ii.  *Drollinger v. Network Global Logistics, LLC,* 2016 U.S. Dist. LEXIS 171013 (D. Colo. Dec. 8, 2016).

     iii.  *Benton v. Deli Mgmt., Inc.,* 2019 U.S. Dist. LEXIS 135522 (N.D. Ga. Aug. 8, 2019).

h. Decisions denying summary judgment for employers, including:

   i. *Perrin v. Papa John's Int'l., Inc.,* 114 F.Supp.3d 707 (E.D. Mo. Jul. 8, 2016).
   ii. *Bass v. PJCOMN Acq. Corp.,* 2010 U.S. Dist. LEXIS 96335 (D. Colo. Sept. 15, 2010)
   iii. *Benton v. Deli Mgmt., Inc.,* 2019 U.S. Dist. LEXIS 135522 (N.D. Ga. Aug. 8, 2019)

i. Decision holding that employers must either (a) track and record actual vehicle costs or (b) reimburse at the IRS standard business reimbursement rate.

   i. *Burton v. DRAS Ptnrs., LLC,* 2019 U.S. Dist. LEXIS 185697, at *8-9 (N.D. Ill. Oct. 27, 2019).
   ii. *Hatmaker v. PJ Ohio, LLC,* 2019 U.S. Dist. LEXIS 191790, at *1-22 (S.D. Ohio Nov. 5, 2019).
   iii. *Hatmaker v. PJ Ohio, LLC,* 2020 U.S. Dist. LEXIS 39715, at *1-13 (S.D. Ohio Mar. 6, 2020).
   iv. *Omelet v. Parts Authority, Inc.*, AAA Case No. 01-20-0003-8239 (Pines Mar. 25, 2021)

j. Decisions holding that employers must reimburse a portion of the fixed costs of driving attributable to performing the job:

   i. *Benton v. Deli Mgmt., Inc.,* 396 F.Supp.3d 1261, 1272 (N.D. Ga. Aug. 8, 2019)
   ii. *Sullivan v. PJ United, Inc.,* 362 F.Supp.3d 1139, 1158 (Jul. 19, 2018)
   iii. *Perrin v. Papa John's Int'l., Inc.,* 114 F.3d 707, 730 (E.D. Mo. Jul. 8, 2015).
   iv. *Morse v. Parts Authority, Inc.,* AAA Case No. 01-20-0003-8372 (Modica Mar. 29, 2021)
   v. *Omelet v. Parts Authority, Inc.*, AAA Case No. 01-20-0003-8239 (Pines Mar. 25, 2021)
   vi. *Nelson v. PJ Cheese, Inc.,* AAA Case No. 01-19-0001-5314 (Kimmell Oct. 20, 2020).

       vii. *Rice v. PJ Cheese, Inc.,* AAA Case No. 01-20-0014-8150 (Bennett Nov. 12, 2021).

  k. Decisions holding that delivery drivers need not own their delivery vehicles or pay their own vehicle costs to recover vehicle costs.

       i. *Edwards v. PJ Ops Idaho,* 2020 U.S. Dist. LEXIS 240167, *27-28 (D. Idaho Dec. 21, 2020).

       ii. *Benton v. Deli Mgmt., Inc.,* 396 F.Supp.3d 1261, 1274 (N.D. Ga. Aug. 8, 2019)

  l. Decisions on the merits:

       i. *Jones v. PJ Cheese, Inc.*, AAA Case No. 01-20-0015-6701 (Hill-Harvey Mar. 16, 2022).

       ii. *Rice v. PJ Cheese, Inc.,* AAA Case No. 01-20-0014-8150 (Bennett Mar. 14, 2022).

       iii. *Johnson v. Parts Authority, Inc.,* AAA Case No. 01-17-0007-5682 (Edelman Aug. 20, 2021)

       iv. *Pannell v. Parts Authority, Inc.,* AAA Case No. 01-20-0009-6223 (Weinstock Aug. 2, 2021)

       v. *Montierth v. Parts Authority, Inc.,* AAA Case No. 01-20-0009-6228 (Guttell Jun. 9, 2021)

       vi. *Morse v. Parts Authority, Inc.,* AAA Case No. 01-20-0003-8372 (Modica Mar. 29, 2021)

       vii. *Omelet v. Parts Authority, Inc.*, AAA Case No. 01-20-0003-8239 (Pines Mar. 25, 2021)

       viii. *Nelson v. PJ Cheese, Inc.,* AAA Case No. 01-19-0001-5314 (Kimmell Oct. 20, 2020).

       ix. *Ralph v. DOS Pizza, Inc.,* AAA Case No. 01-18-0002-2036 (Berger May 5, 2020).

       x. *Ashton v. PJ Louisiana, Inc.,* AAA Case No. 01-17-0006-8180 (Pilie Mar. 26, 2019).

       xi. *Lucio v. Parts Authority, Inc.,* AAA Case No. 01-18-000-6169 (Masucci Apr. 25, 2019).

Ex. 4, ¶ 7.

One district court recognized Mr. Potashnick's contribution to minimum wage claims resulting from under-reimbursed vehicle costs:

> In some of these cases, [Claimants' Counsel including Mr. Potashnick] have represented pizza delivery drivers situated precisely as Claimants have been in the present case. In addition, the quality of the pleadings, motions, and briefs in the case fully evidences Class Counsels' skill, competence, and knowledge of the applicable law.
>
> …the fees are reasonable based on Class Counsels' skill. [Claimants' Counsel] are experienced and innovative wage and hour lawyers, which appears to be a niche practice. *They have developed an expertise in challenging the sufficiency of compensation for pizza delivery drivers under the FLSA.*

*Hackett v. ADF Rest. Invs.*, 259 F.Supp.3d 360, 368 (D. Md. 2016) (emphasis added); *see also, e.g., Sagendorf v. Quality Huts, LLC,* 2021 U.S. Dist. LEXIS 213619, at *9-10 ("Plaintiffs' attorneys have really pioneered minimum wage claims based on under-reimbursed vehicle costs, and have obtained many key rulings in this field."); *Dotson v. P.S. Mgmt., Inc.,* Case No. 2:17-cv-00896-JTC (S.D. W. Va. Apr. 7, 2020) (ECF Doc. No. 90) (Ex. 12), at 15 ("[c]hallenging pizza delivery companies on the basis of unpaid minimum wages in the context of partially unreimbursed expenses is a complex area of the law, an area to which plaintiffs' counsel has substantially contributed."); *Jimenez v. Pizzerias, LLC,* 2017 U.S. Dist. LEXIS 129820, *13-14 (S.D. Fla. Aug. 14, 2017) ("…Plaintiffs' Counsel in this matter are experienced and innovative wage and hour lawyers who have developed expertise

in challenging the sufficiency of compensation for pizza delivery drivers under the FLSA."). This experience helped achieve the settlement in this case.").

### 2.    Eli Karsh

Eli Karsh tragically died in September 2021.  He graduated from Washington University School of Law in 1994 and was in private practice until his death.  For 27 years, his practice was devoted to representing clients in the areas of labor, employment and employee benefits law.  For the last approximately 5 years, most of his litigation has entailed class and/or collective action employment claims.  Mr. Karsh obtained several five- and six-figure verdicts in employment and civil rights claims include.  He was listed as a "Super Lawyer" in the employment field in *Missouri and Kansas Super Lawyers*.  He was awarded $450.00 per hour in several claims. *See, e.g., Kirby v. Caudill Ventures, LLC,* Case No. 7:19-cv-170-JCD (E.D.N.C. Aug. 28, 2020) (ECF No. 24) (Ex. 9) (finding Mr. Karsh's $450.00 hourly rate to be "reasonable" in same claim by pizza delivery drivers); *Kirby v. Caudill Ventures, LLC,* Case No. 7:19-cv-170-JCD (E.D.N.C. Aug. 20, 2020) (ECF No. 21) (Ex. 10) (fee and cost petition seeking $450.00 per hour for Mr. Karsh); *Nelson v. PJ Cheese, Inc.,* AAA Case No. 01-19-0001-5314 (Kimmel) (Ex. 11) (awarding all fees sought) *with Nelson v. PJ Cheese, Inc.,* AAA Case No. 01-19-0001-5314 (Kimmell) (Ex. 7) (post-hearing brief seeking fees for Mr. Karsh at a rate of $450.00 per hour).

26

Mr. Karsh's time records in this case were not located after his death. However, Mr. Potashnick estimates that Mr. Karsh spent roughly the same amount of time pursuing this litigation as Mr. Potashnick spent through August 2020. Mr. Potashnick spent a total of 37.9 hours on this matter through the end of that month. Potashnick Decl., ¶ 17.

### 3.    The Market

In determining the reasonableness of the hourly rates, a court must set rates according to what the record demonstrates the market commands for analogous litigation. *Blum v. Stenson*, 465 U.S. 886, 895 (1984) (Reasonable fees under fee shifting statutes are to be "calculated according to the prevailing market rates in the relevant community. . . ."). In *Benton*, this District approved Mr. Potashnick's fees at a rate of $500.00 per hour. *Compare Benton v. Deli Mgt., Inc.,* Case No. 1:17-cv-00296-TCB (N.D. Ga. Jan. 28, 2020) (Ex. 5), at 8 (finding Mr. Potashnick's rate of $500.00 per hour to be "reasonable"); *Benton v. Deli Mgt., Inc.,* Case No. 1:17-cv-00296-TCB (N.D. Ga.) (ECF Doc. # 138) (Ex. 6), at 5, 12 & 13 (seeking fees for Mr. Potashnick at rate of $500.00 per hour). In *Nelson v. PJ Cheese, Inc.*, this District likewise awarded Mr. Potashnick fees at a rate of $500.00 per hour and approved Mr. Karsh fees at a rate of $450.00 per hour. *Compare Nelson v. PJ Cheese, Inc.*, Case No. 4:20-cv-00242-JPB (N.D. Ga.) (ECF Doc. # 7) (Ex. 7), at 6 (seeking fees for Mr. Potashnick at rate of $500.00 per hour and seeking fees for Mr.

Karsh at rate of $450.00 per hour) *with Nelson v. PJ Cheese, Inc.,* 2021 U.S. Dist. LEXIS 114633, at *5-6 (N.D. Ga. Jun. 17, 2021) (awarding all fees sought). Thus, the local market supports the rates sought. *See also, e.g., Burton v. DRAS Partners, LLC,* Case No. 19-cv-02949-SJC (N.D. Ill. Nov. 12, 2019) (ECF No. 35) (Ex. 8) (awarding $500.00 per hour for Mr. Potashnick).

Notably, the value of Plaintiffs' counsel's time spent pursuing the claims is greater than the amount of fees they now seek. ((61 hours by Mark Potashnick x $500.00 per hour) + (37.9 hour by Eli Karsh (estimated) x $450.00 per hour) = $47,555.00 total lodestar).

## C.    The Costs Incurred Should Be Awarded as Reasonable

Like fees, an award of reasonable litigation costs is mandatory in FLSA claims. 29 U.S.C. 216(b). This may include "reasonable out of pocket expenses" that go "beyond those normally allowed under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920." *Eason v. Bridgewater & Assocs.,* 108 F.Supp.3d 1358, 1365 (N.D Ga. Jun. 9, 2015) (recognizing that "reasonable out-of-pocket costs" are awardable in FLSA suits); Lee v. Krystal Co., 918 F.Supp.2d 1261, 1275 (S.D. Ala. Jan. 15, 2013) (same, citing cases); see also, e.g., *Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 580 (9th Cir. 2010) ("[W]e repeatedly have allowed prevailing plaintiffs to recover non-taxable costs where statutes authorize attorney's fees awards to prevailing parties.").

Plaintiffs' counsel request for fees and costs includes reimbursement for $2,650.00 in out-of-pocket costs. See Potashnick Decl. ¶¶ 13. These expenses were reasonably and necessarily incurred in the prosecution of the case, are the types of expenses customarily included in a bill for professional services and not absorbed as part of firm overhead. *Id.*

## IV.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court approve the parties' Settlement Agreement including recovery to the Plaintiffs, fees and costs.

### Font and Point Certification

The undersigned counsel hereby certify under LR 7.1.D that the above brief was prepared with Times New roman 14-point font.

Respectfully submitted,

**WEINHAUS & POTASHNICK**
/s/ *Mark Potashnick*
Mark A. Potashnick
(Admitted *pro hac vice*)
11500 Olive Boulevard, Suite 133
St. Louis, Missouri 63141
Telephone:  (314) 997-9150
Facsimile: (314) 997-9170
markp@wp-attorneys.com

**THE WEINER LAW FIRM**
Andrew Weiner (GA Bar #808278)
3525 Piedmont Road
7 Piedmont Center, 3rd Floor
Atlanta, Georgia 30305
Telephone:  (404) 254-0842
Facsimile: (866) 800-1482

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ Mark Potashnick*